UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ELIGIO TORRES, JR., and<br>IRENE CORREA, | )<br>)<br>) | |
| Plaintiffs, | ) | No. 12 C 7844 |
| | ) | |
| vs. | ) | Judge Gottschall |
| | ) | Magistrate Judge Valdez |
| CITY OF CHICAGO,<br>HENRY PENA,<br>HECTOR ROMERO, and<br>ANDREW ROWE, | )<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSES TO DEFENDANTS' RULE 56.1
STATEMENT OF UNCONTESTED FACTS**

    1.    Plaintiff Eligio Torres ("Torres") is an individual who, on October 1, 2010, resided at 3227 West Pierce Avenue, Chicago, Illinois. (Deposition of Eligio Torres 10:16-24; IPRA Statement of Eligio Torres 2:17-18).

    **RESPONSE: Not disputed.**

    2.    Plaintiff Irene Correa ("Correa) is an individual who, on October, 2010, resided at 3227 West Pierce Avenue, Chicago, Illinois. (Deposition of Irene Correa 13:1214; 14:21-23; IPRA Statement of Irene Correa 3:4).

    **RESPONSE: Not disputed.**

    3.    Defendant Pena is a Police Officer with the Chicago Police Department ("CPD"). (Deposition of Henry Pena 7:18-20). On October 1, 2010, Pena worked as a tactical officer in the 13th District. (Pena Dep. 11:18-21).

    **RESPONSE: Not disputed.**

    4.    Defendant Romero is a Police Officer with the CPD. (Deposition of Hector Romero 8:5-7). On October 1, 2010, Romero worked as a tactical officer in the 13th District. (Romero Dep. 10:14-19).

**RESPONSE: Not disputed.**

5.  Defendant Rowe is a Police Officer with the CPD. (Deposition of Andrew Rowe 6:24-7:2). On October 1, 2010, Rowe worked as a patrol officer in the 14th District. (Rowe Dep. 8:20-24).

**RESPONSE: Not disputed.**

6.  On October 2, 2010, Pena and Romero were partners. (Pena Dep. 16:4-6; Romero Dep. 15:7-11). Pena and Romero were driving an unmarked squad car. (Pena Dep. 16:9-12; Romero Dep. 15:17-21).

**RESPONSE: Not disputed.**

7.  Pena and Romero were both wearing civilian dress. (Pena Dep. 17:16-18:6; Romero Dep. 17:18-18:6). Pena and Romero were each wearing jeans and a tshirt, duty belt, and bulletproof vest. (Pena Dep. 17:16-18:6; Romero Dep. 17:1818:6).

**RESPONSE: Not disputed.**

8.  The duty belt held Pena and Romero's handcuffs, flashlight, holster, firearm, and ammunition. (Pena Dep. 17: 23-18:1; Romero Dep. 17:18-18:6; 19:8-17). Pena had his police star clipped to the duty belt. (Pena Dep. 17: 23-18:1).

**RESPONSE: Not disputed.**

9.  The protective vest did not have any markings identifying police or CPD. (Pena Dep. 19:3-10; Romero Dep. 19:18-23).

**RESPONSE: Not disputed.**

10.  Both Pena and Romero wore their police radio on their vest. (Pena Dep. 17:1622; 19:11-13; Romero Dep. 18:7-13). Romero wore his police star on his vest. (Romero Dep. 18:14-22).

**RESPONSE: Not disputed.**

11.  On the evening of October 1, 2010, Torres and Correa were socializing at a neighbor's house. (Correa Dep. 54:2-12; Correa IPRA 5:18-22; Torres Dep. 45:7-13; Torres IPRA 4:14-15).

**RESPONSE: Not disputed.**

12.  Torres left the neighbor's house, and walked to and entered his car, which was

2

parked in the carport behind 3225 West Pierce. (Correa Dep. 54:13-18; Correa IPRA 7:4-10; Pena Dep. 29:21-24; Romero Dep. 35:15-17; Torres Dep. 45:1647:4; Torres IPRA 4:17-24).

**RESPONSE: Not disputed.**

13. At some point during the evening, Pena and Romero received a flash message over their car radio, indicating that a shooting had occurred near Augusta Boulevard and Francisco Avenue. (Pena Dep. 22:24-23:15; 24:9-16; Romero Dep. 22:5-10; 23:20-24).

**RESPONSE: Not disputed.**

14. Pena and Romero received information over their police radio that the shooting suspect's name was Corey Campbell, and that Corey Campbell's address was 3227 West Pierce, Chicago, Illinois. (Pena Dep. 25:4-26:4; Romero Dep. 23:20-24; 24:4-10).

**RESPONSE: Plaintiffs agree Pena and Romero received information over their radio, but dispute that Pena and Romero were informed that 3227 West Pierce was Corey Campbell's current address at the time; rather, they were informed that it was his last known address. (Def. Ex. 2, Pena Dep. 26:9-12, 30:18-21; Def. Ex. 3, Romero Dep. 23:20-24.)**

15. Pena and Romero drove to 3227 West Pierce. (Pena Dep. 26:7-12; Romero Dep. 24:21-25:4).

**RESPONSE: Not disputed.**

16. Shortly after arriving at 3227 West Pierce, Pena and Romero observed a male walk out of the gangway at 3227 West Pierce, and enter a vehicle in the carport behind 3227 West Pierce. (Pena Dep. 29:7-24; Romero Dep. 33:15-35:17).

**RESPONSE: Plaintiffs agree that shortly after arriving at 3227 West Pierce, Pena and Romero observe Eligio walking. Plaintiffs' dispute that Eligio was observed walking out of the gangway at 3227 West Pierce. Eligio left his neighbor's house, located at 3234 West Le Moyne and walked to his carport at 3225 West Pierce. (Def. Ex. 2, Pena Dep. 32:3-4; Def. Ex. 3, Romero Dep. 34:24-35:2, 35:8-11; Def. Ex. 5, Torres Dep. 39:18-23, 46:10-11).**

17. Unknown to Pena and Romero at the time, the individual Pena and Romero observed was Torres. (Pena Dep. 29:18-24; Romero Dep. 33:12-14).

**RESPONSE: Not disputed.**

18. Pena and Romero exited their vehicle, and approached Torres for the purpose of conducting an investigation. (Pena Dep. 32:8-13; Romero Dep. 37:13-38:24).

**RESPONSE: Plaintiffs agree Defendants approached Eligio, but dispute that their**

3

**purpose was for a mere "investigation" and contend that Officers Pena and Romero immediately blocked-in Eligio's car, and seized him. Plaintiffs further dispute that Officers Pena and Romero had probable cause or reasonable suspicion to approach Eligio Torres for any purpose. (Def. Ex. 2, Pena Dep. 30:14-17, 32:14-16; Def. Ex. 3, Romero Dep. 35:8-36:19, 37:3-12).**

19. As Pena and Romero approached Torres' vehicle, Pena and Romero observed Torres move his hands, and reach around in the vehicle. (Pena Dep. 33:20-34:10; 35:11-16; Romero Dep. 40:19-41:1).

**RESPONSE: Plaintiffs dispute that Torres was moving his hands in the vehicle and that his movements were suspicious. Torres' movements (if any) were consistent with his efforts to start his car and back out of the driveway. (Def. Ex. 5, Torres Dep. 47:7-21).**

20. Pena opened the front driver-side door to Torres' vehicle, and Romero opened the front passenger-side door to Torres' vehicle. (Pena Dep. 40:20-41:2; Romero Dep. 45:5-10; Torres Dep. 47:5-21; Torres IPRA 6:4-13).

**RESPONSE: Not disputed.**

21. Pena and Romero engaged in a physical confrontation with Torres that resulted in Torres' right hand being handcuffed to the steering wheel of his vehicle. (Pena Dep. 36:23-37:2; Romero Dep. 45:11-20; Torres Dep. 53:8-22; Torres IPRA 6:15-19; 9:20-22).

**RESPONSE: Not disputed.**

22. At the time he was handcuffed to the steering wheel, Torres realized that Pena and Romero were police officers. (Torres Dep. 55:8-12).

**RESPONSE: Plaintiffs agree only that at the moment Eligio was handcuffed he started to realize that these were police officers who were attacking him. (Def. Ex. 5, Torres Dep. 55:8-12).**

23. During the confrontation, Torres was screaming and honking his car's horn. (Romero Dep. 47:19-48:6; Torres Dep. 56:3-18).

**RESPONSE: Not disputed.**

24. Correa heard Torres screaming and honking the car horn, and ran out of the neighbor's house towards the direction of the noise. (Correa Dep. 54:20-56:19).

**RESPONSE: Not disputed.**

25. Correa saw Pena and Torres struggling with each other, ran up to the car, and pushed Pena. (Correa Dep. 56:20-59:5; 63:22-24; 64:8-12; Correa IPRA 9:4-11; Pena Dep. 45:10-17; Romero Dep. 50:17-18; 55:19-23).

4

**RESPONSE: Not disputed.**

26. After being pushed by Correa, Pena struck Correa in the face one time. (Correa Dep. 65:4-9; Correa IPRA 12:5-17; Pena Dep. 45:18-21; 46:5-7; Romero Dep. 57:6-58:3; 59:1-3; Torres Dep. 64:12-14; 65:23-66:1).

**RESPONSE: Plaintiffs do not dispute that Pena struck Correa in the face, but contend the striking was a punch with a closed fist. (Def. Ex. 1, Correa Dep. 65:4-9; Pl. Ex. B, E. Breen Dep. 12:1-5; Pl. Ex. C, Wilson Dep. 11:9-13).**

27. Correa is arrested and removed from the immediate scene without any additional force being used against Correa. (Correa Dep. 68:10-12; 78:2-4; Pena Dep. 46:15-22; Romero Dep. 59:4-60:4).

**RESPONSE: Not disputed.**

28. At some point, Officer Rowe arrives on the scene, in response to receiving an assist call on his radio. (Rowe Dep. 23:23-26:14).

**RESPONSE: Not disputed.**

29. Rowe spoke with Pena or Romero, who told Rowe that Torres had fought them, that Torres was handcuffed to the steering wheel, that Torres needed to be uncuffed and removed from the vehicle, and that the police officers wanted a taser in case the situation got out of control. (Rowe Dep. 35:10-20).

**RESPONSE: Disputed. Officer Pena testified that when Rowe arrived on the scene, they barely had a conversation, and he only told Officer Rowe that Eligio was handcuffed in the car. He did not request Rowe's assistance and did not say Eligio was fighting with officers. (Def. Ex. 2, Pena Dep. 47:17-24).**

30. Torres states that he was uncuffed from the steering wheel, but re-handcuffed with both hands behind his back before being removed from the vehicle. (Torres Dep. 68:12-69:5; Torres IPRA 11:23-24).

**RESPONSE: Not disputed.**

31. After being uncuffed from the steering wheel, during the process of being removed from the vehicle, Torres kicked Pena in the leg. (Pena Dep. 49:3-6; 50:10-51:2; Romero Dep. 64:7-65:9; Rowe Dep. 41:13-43:12; Torres Dep. 69:9-70:11; 72:20-73:13; 78:9-13; Torres IPRA 12:2-4).

**RESPONSE: Plaintiffs dispute that Torres forcefully or intentionally kicked Pena. Torres testified that he possibly brushed Pena's leg inadvertently when he got out of the vehicle and his hands were handcuffed behind his back. Torres also describes it as a reflex that occurred in an attempt to help his girlfriend Correa, whom had just been punched in**

5

the face. (Def. Ex. 5, Torres Dep. 73:1-13; Def. Ex. 7, Torres IPRA 12:23-13:6).

32. After Torres kicked Pena and exited the vehicle, Rowe shoots Torres with his taser, and Torres falls to the ground. (Pena Dep. 52:24-53:54:16; Romero Dep. 65:20-21; 67:5-68:1; Rowe Dep. 43:16-44:6; Torres Dep. 72:11-14).

**RESPONSE: Again, Plaintiffs dispute the implication that Torres kicked Pena. (Def. Ex. 5, Torres Dep. 73:1-13; Def. Ex. 7, Torres IPRA 12:23-13:6). Plaintiffs do not dispute the remainder of this paragraph.**

33. After being tased a second time, Torres is subdued and put into an ambulance. (Romero Dep. 69:12-71:2; Rowe Dep. 48:17-49:7; 59:21-60:11; Torres Dep. 75:17-76:17).

**RESPONSE: Disputed. Torres was subdued in advance of the second tase because he was compliant, handcuffed, and lying face down on the ground. Further, Torres disputes that he was only tasered one additional time on the ground. (Pl. Ex. A, D. Breen Dep. 15:24-17:14; Def. Ex. 5, Torres Dep. 74:18-75:8).**

34. Torres was arrested and charged with aggravated battery and possession of a controlled substance. (Torres Dep. 17:15-18:4).

**RESPONSE: Plaintiffs don't dispute this, but note that the charge was Aggravated Battery to a Police Officer.**

35. Correa was arrested and charged with aggravated battery. (Correa Dep. 29:2324).

**RESPONSE: Plaintiffs don't dispute this, but note that the charge was Aggravated Battery to a Police Officer.**

        Respectfully submitted,

        /s/ Sara Garber
        *Counsel for Plaintiffs*

Sara Garber
Jackowiak Law Offices
20 North Clark Street, Suite 1700
Chicago, Illinois 60602
(312) 795-9595